O

# United States District Court
# Central District of California

| | |
|---|---|
| RAUL LEOS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL EXPRESS CORPORATION; and DOES 1 through 25, inclusive, <br><br> Defendants. | Case No. 2:14-cv-02864-ODW(AGRx) <br><br> **ORDER DENYING MOTION TO REMAND [19]** |

## I. INTRODUCTION

This action was removed from the Los Angeles County Superior Court based on diversity jurisdiction under the Class Action Fairness Act ("CAFA") , 28 U.S.C. § 1332(d). Plaintiff Raul Leos moves the Court to remand based on the amount in controversy. (ECF No. 19.) Leos is a former employee of Defendant Federal Express Corporation ("FedEx"). Leos is suing FedEx for violations of Los Angeles and California wage-and-hour laws on behalf of himself and a putative class of current and former employees. In the Motion, Leos disputes only CAFA's $5 million amount-in-controversy requirement, and alternatively requests a stay of proceedings pending the outcome in *Dart Cherokee Basin Operating Co. v. Owens*, 134 S. Ct. 1788 (2014). The Court finds that FedEx has met its evidentiary burden in establishing that the

amount in controversy exceeds $5 million and accordingly **DENIES** Leos's Motion to Remand.[1] (ECF No. 19.) Further, because the Court finds that FedEx has provided evidence sufficient to establish amount in controversy, it declines to stay the proceedings.

## II. FACTUAL BACKGROUND

On February 6, 2014, Leos filed the class-action Complaint in Los Angeles County Superior Court, followed by the First Amended Complaint on March 12, 2014. Leos alleges that FedEx failed to pay him and other putative class members the appropriate wages under the applicable Los Angeles ordinance and to timely pay wages due upon discharge or resignation, as well as failure to furnish accurate wage-and-hour statements. (ECF No. 1, Ex. B ("FAC").) Leos raises only state-law claims. Leos defines the putative class members as,

> [Leos] and all similarly situated individuals who work or have worked for Defendant in California at the Los Angeles World Airports ("LAWA") as a Material Handler, or any similar positions whose duties include the handling, sorting, and loading of cargo and baggage, at any time during the four years preceding the filing of the action and continuing while the action is pending, who were denied the benefits and protections required under the Living Wage Ordinance set forth in the Los Angeles Administrative Code, and various provisions of the California Labor Code and other statutes and regulations applicable to California employees.

(FAC ¶ 1.)

FedEx removed this action on April 14, 2014, on the basis of diversity jurisdiction under CAFA. (ECF No. 1. ("Notice of Removal").) On May 19, 2014, Leos filed the present Motion to Remand, alleging that FedEx's Removal was based

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

on speculation and self-serving assumptions. (ECF No. 19.) FedEx timely opposed. (ECF No. 24 ("Opp'n").) FedEx supports its Opposition with declarations from John T. Lopinsky, a FedEx Payroll Advisor; Todd J Fuglseth, a FedEx Human Resources Advisor; Venytra C. Harris, a FedEx Human Resources Business Analyst in the Human Resources Department; and Dane Worley, a Senior Manager in the Los Angeles Regional HUB. Leos's Motion is now before the Court for decision.

### III.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject-matter jurisdiction. 28 U.S.C. § 1447(c).

Subject-matter jurisdiction exists in civil cases involving a federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332. Under CAFA, federal district courts have original jurisdiction to a hear a class action if the proposed class has (1) more than 100 members, (2) the parties are minimally diverse, and (3) the amount in controversy in the aggregate exceeds the sum or value of $5 million. 28 U.S.C. § 1332(d)(2), (d)(5)(B); see also *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348–49 (2013). In removal cases, the removing party bears the burden of proving subject-matter jurisdiction under CAFA by a preponderance of the evidence. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013).

### IV.  DISCUSSION

Neither party disputes the first two requirements of CAFA jurisdiction—the purported class has more than 100 members and there is minimal diversity. The parties only dispute whether FedEx has met its burden on removal of establishing that the amount in controversy exceeds $5 million. Specifically, Leos alleges that FedEx

has not provided sufficient evidence in support of the amount in controversy, and that FedEx erred when using the 100-percent violation rule in its calculation of the amount in controversy.

**A. Sufficiency of Evidence for CAFA Amount-In-Controversy**

Leos moves to remand the case on the grounds that FedEx has not provided sufficient evidence to establish that the amount in controversy exceeds $5 million. In determining the amount in controversy for subject-matter jurisdiction, federal district courts look to the complaint. *Singer v. State Farm Mut. Auto. Ins. Co.* 116 F.3d 373, 376 (9th Cir. 1997) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995)). If the amount in controversy is not facially apparent in the complaint, the Court may consider the removal petition and any "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," similar to a review under Federal Rule of Civil Procedure 56. *Id.*; *accord Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Summary-judgment-type evidence includes "materials in the record, including . . . affidavits and declarations[.]" Fed. R. Civ. P. 56(c)(1). Further, the removing party is not required to provide extensive business records in order to establish the amount in controversy. *Muniz v. Pilot Travel Ctrs. LLC* No. CIV.S-07-0325 FCB EFB, 2007 WL 1302504, at *5 (C.D. Cal. May 1, 2007).

Leos makes seven claims for violations of California and Los Angeles wage-and-hour laws. Leos does not specify the amount in controversy in the Amended Complaint. (*See generally* FAC) Because the amount in controversy is not specified, FedEx has the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Rodriguez*, 728 F.3d at 977. Leos argues that FedEx has not met its burden in that it has failed to provide actual evidence of the amount in controversy and instead has relied on speculation and self-serving assumptions. In the Notice of Removal, FedEx initially asserted that the amount in controversy for Leos's first and second causes of action and applicable attorney fees is

$6.5 million. (Not. of Removal ¶ 25.) FedEx has since adjusted the figure to $7,035,783.96, which includes figures for Leos's third and fourth causes of action as well. (Opp'n 11-12.)

Leos contends that the figures asserted by FedEx in the Notice of Removal are speculative and based on self-serving assumptions rather than on evidence. The Notice of Removal used a calculation method that assumes a 40-hour work week for 52 weeks per year with no absences. (Not. of Removal 7 n.3.) Further, the assumptions used in the Notice of Removal are not based on any supporting declaration. (*See generally id.*) Further, the class is assumed to be 100 members, which is used "for purposes of calculation" (*id.* at 7 n.4.), and again was not supported by any declaration of any FedEx employee competent to make such statement.

However, the Court is permitted to look at "summary-judgment-type evidence" in determining amount in controversy for purposes of removal under CAFA, *Singer v. State Farm Mut. Auto. Ins. Co.* 116 F.3d 373, 376 (9th Cir. 1997) (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995)), and therefore may look to FedEx's Opposition for such evidence. FedEx provides a much more comprehensive analysis in establishing the amount in controversy in the Opposition, and accordingly, the Court finds that FedEx has met its burden of establishing by preponderance of the evidence that the amount in controversy exceeds $5 million.

In his Reply to FedEx's Opposition, Leos contends that the Declarations of Todd J. Fuglseth, Venytra C. Harris, Dane Worley, and John T. Lopinsky are inconsistent and again are based on self-serving assumptions. (Reply 1–4.)

First, Leos argues that the number of putative class members ascertained by Harris is inconsistent with the number of putative class members used by Lopinsky. (Reply 2.) Harris declares that "2086 employees held the position of Handler (DOT and Non-DOT), Freight Handler or Material Handler" from January 19, 2010, until February 7, 2014. (Harris Decl. ¶ 4.) In calculating the average hourly rate of the putative class members, Lopinsky used a "list of 2052 current and former employees

of FedEx" that he understood made up the putative class. (Lopinsky Decl. ¶ 4.) Additionally, Leos argues that Fuglseth also used a purported list of putative class members to determine how many had opted out of healthcare[2] but did not indicate the source or number of total putative class members he used. (Reply 2–3.)

Although the Court recognizes that there are inconsistencies in the number of putative class members used in the calculations by FedEx employees, the inconsistencies are not fatal. The difference in putative class members is 34 employees, which the Court does not see as significant. In calculating the amount in controversy, FedEx used the number of employees who had declined healthcare—205 employees—rather than either 2086 or 2052. At roughly ten percent of the putative class, 205 employees is a significantly smaller subset than the putative class as a whole. Fuglseth determined that 205 employees out of either 2086 (9.8 percent) or 2052 (10 percent) had declined healthcare, and the Court does not find this difference significant.

Leos would like the Court to find that all of the numbers are unreliable, but the Declarations of Fuglseth, Harris, and Lopinsky are declarations of a Human Resources Analyst, a Human Resources Business Analyst, and a Payroll Advisor, respectively. All of the declarants have personal knowledge of the facts in their declarations, and all of the declarants have routine familiarity with retrieving and analyzing the data in their declarations. The Court finds their declarations persuasive.

Next, Leos attacks Los Angeles Regional HUB Senior Manager Dane Worley's declaration that "he oversees 'a work group . . . made up of handlers'" as vague,

---

[2] The Los Angeles Living Wage Ordinance requires employees to be paid according to whether they have opted into our out of healthcare programs provided by the employer. City of L.A., Current and Prior Living Wage Rates for Airport Employees (2013), *availalble at* http://www.lawa.org/uploadedFiles/LAWA/pdf/Current_and_Prior_Living_Wage_Rates_2013.pdf. Because Leos opted out of healthcare, FedEx used the subset of those who opted out of healthcare in calculating the amount in controversy in order to provide a "conservative, good faith calculation of damages." (Opp'n 9.) At 205 employees, this subset meets the $5 million amount-in-controversy requirement—so the class as a whole would certainly exceed the requirement with more than 2000 members.

1 because Worley does not indicate the size of the group, nor does he indicate whether
2 all class members worked the average of 20 hours per week. Leos' argument is
3 without merit. Worley's declaration actually states the he is a "Senior Manager over a
4 work group at the Los Angeles Regional HUB primarily made up of handlers, and [he
5 is] familiar with their scheduled work hours." (Worley Decl. ¶ 2.) The Court reads
6 this statement to mean that Worley oversees handlers in the Los Angeles Regional
7 HUB and some other workers, which would necessarily include handlers who are
8 putative class members. This is not a matter of FedEx being vague, but of Leos's
9 misguided logic. Further, Worley also indicates that the handlers in his group—not
10 the entire group—work an average of 20 hours per week. (Worley Decl. ¶ 3.) The
11 Court finds that Worley's declaration is sufficiently specific and informative.

12 Lastly, Leos argues that Harris and Worley do not support their use of
13 "handlers" (Worley Decl. ¶ 2-3.), and "Handler (DOT and Non-DOT), Freight
14 Handler and Material Handler" (Harris Decl. ¶ 4.), with any evidence or proof that the
15 employees are members of the purported class. However, Leos indicates that the class
16 is comprised by "[a]ll individuals employed by, or formerly employed by, Defendant
17 at the Los Angeles World Airports in the State of California as a Material Handler (*or*
18 *any similar positions whose duties include the handling, sorting, and loading of cargo*
19 *and baggage*) . . . ." (FAC ¶ 24 (emphasis added).) Because the Amended Complaint
20 explicitly mentions Material Handlers, it is clear that Material Handlers are putative
21 class members. Additionally, because the Amended Complaint refers to any other
22 employees whose tasks include "handling, sorting, and loading of cargo and baggage,"
23 the Court can confidently infer that "handlers" handle and that "Freight Handlers"
24 handle things like cargo. The Court is not quite as mystified by the inclusion of other
25 employees that meet the requirements in Leos's own Amended Complaint as Leos
26 himself seems to be.

27 Additionally, the Court finds that FedEx bases its Opposition on sufficient
28 evidence to support the conclusion that it has established the amount in controversy by

7

a preponderance of the evidence. The number of hours worked per week is based on consultation with Worley, who is Senior Manager of the Los Angeles Regional HUB. The average pay rate of $14.13 per hour was determined by Lopinsky, who is a Payroll Advisor and was higher by $0.46 than the amount paid to Leos himself—a figure which would seem to defeat the argument that the average pay rate used is self-serving. Further, as discussed above, the number of employees used in calculations includes only members of the putative class who opted out of healthcare, and is one-tenth that of the putative class members. This figure is based on consultation with Fuglseth, who is a Human Resources Advisor working in FedEx's Benefits Department. Accordingly, the Court finds that the evidence provided in the Response is based on sufficient factual data and supported by declarations of employees with personal knowledge.

### B. 100-Percent Violation Rule

In determining the amount in controversy, the Court "must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in this complaint." *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) (citations omitted) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). With respect to statutory penalties, a plaintiff may not "avoid satisfaction of the amount in controversy by arguing that the class plaintiffs may be awarded less than the statutory maximum." *Korn*, 536 F. Supp. 2d at 1206 n.4. Similarly, courts have assumed a 100-percent violation rate where the complaint does not allege facts specific enough to "'narrow the scope of the putative class or the damages sought.'" *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) (quoting *Muniz*, 2007 WL 1302504, at *4).

However, parties may not rely on the assumption that the 100-percent violation rule applies without supporting the assumption with evidence. *Garibay v. Archstone Cmtys. LLC*, 539 Fed. App'x 763 (9th Cir. 2013). Additionally, courts have "rejected

the unsupported use of 100% maximum violation rates." *See Emmons v. Quest Diagnostics Clinical Labs, Inc.*, No. 1:13–cv–0474 AWI–BAM, 2014 WL 584393, at *5 (E.D. Cal. Feb. 12, 2014) (citing *Weston v. Helmerich & Payne Int'l Drilling Co.*, No. 1:13–cv–01092–LJO–JLT, 2013 WL 5274283, at *5–6 (E.D. Cal. Sept. 16, 2013).

In contrast, courts have allowed the assumption of a 100-percent violation rate where the plaintiff alleges in the complaint that each member of the class has been harmed. *Coleman*, 730 F. Supp. 2d at 1149. Similarly, courts have determined that in calculating amount in controversy, the average wage of the class members is an appropriate rubric for assessing wages as well as penalties based on wage-and-hour violations. *Id.* at 1150 (quoting *Helm v. Alderwoods Grp., Inc.*, No. C 08-01184 SI, 2008 WL 2002511, at *4 n.3 (N.D. Cal. May 7, 2008)).

Leos's third claim in the Amended Complaint is for violation of California Labor Code section 226. Leos claims that "Class Members are entitled to all available statutory penalties . . . provided in California Labor Code section 226(e)." (FAC ¶ 52.) California Labor Code section 226(e) provides that provision of inadequate wage-and-hour statements entitles each affected employee to up to a $4000 statutory maximum penalty. Leos urges the Court to apply *Garibay*, in which the Ninth Circuit remanded a case because the evidence supporting the amount in controversy in the Notice of Removal was based on assumptions.

In *Garibay*, the removing party attempted to base removal on the assumption that every putative class member would be entitled to recover damages for inadequate wage-and-hour statements for every single pay period but did not support these assumptions with specific facts. The Ninth Circuit found the removing party could not calculate the amount in controversy by using the 100-percent violation rule, because the removing party had not provided any evidence that each putative class member had been so harmed, and that assumptions were inadequate to support the use of the 100-percent violation rule.

But here, the gravamen of Leos's claims is that FedEx willfully deprived its employees of adequate wages under Los Angeles's Living Wage Ordinance ("LWO"). In *Garibay*, the employer may have provided inaccurate wage-and-hour statements, but the court concluded that it was not necessarily the case that each and every pay statement was inadequate. In contrast, Leos alleges that FedEx did not "[pay] in full for all hours worked, including overtime, among other things. [FedEx] applied this illegal wage device *uniformly to all Class Members . . . . All who were subject to this unlawful compensation scheme suffered damages*." (FAC ¶ 27 (emphasis added).)

Leos goes further, alleging that all class members were not provided with adequate wage-and-hour statements "since the amount paid by [FedEx] did not correspond to the amounts required by the LWO." (FAC ¶ 28.) Where all members were damaged due to inadequate compensation, and therefore all were given inadequate wage-and-hour statements, it follows that all are subject to calculation in assessing statutory penalties under California Labor Code section 226(e). The Court's analysis is consistent with *Garibay*, in that the removing party in *Garibay* relied on the assumption of a 100-percent violation rate to calculate statutory damages, where here, FedEx has relied on the specific and explicit allegation in the Complaint that each and every class member received inadequate wage-and-hour statements. As the Court in *Roth* explained, the court "must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in this complaint." 799 F. Supp. 2d at 1117 (quoting *Kenneth Rothschild Trust*, 199 F.Supp.2d at 1001).

The same line of analysis applies for the alleged statutory penalties under California Labor Code sections 201–03. In the Amended Complaint, Leos alleges that FedEx "failed to pay accrued wages and other compensation due immediately to each Class Member who was terminated and failed to pay accrued wages within 72 hours to each Class Member who ended his or her employment." (FAC ¶ 54.) Leos may not allege that all class members who were terminated or ended their employment are

harmed and then claim foul when FedEx uses all such class members in assessing statutory damages. FedEx ascertained the number of employees who had left employment during the applicable time to be 729 employees. (Opp'n 12; Harris Decl. ¶ 4.) FedEx then used this number to assess statutory damages under California Labor Code section 203 by multiplying the number of employees terminated by the average wage rate, the average hours per day over 30 days—as the section provides. FedEx used an appropriate method of discerning the number of employees terminated, and according to the Amended Complaint, "*each* Class Member who was terminated and . . . *each* Class Member who ended his or her employment" was affected by FedEx's alleged misdeeds. The Court finds that FedEx's calculations were not based on assumptions like the ones in *Garibay*; rather they were based on concrete numbers provided by a Human Resources Analyst and on Leos's own specific allegation that all class members were so affected.

## V. CONCLUSION

The Court finds that FedEx has established by a preponderance of the evidence that the amount in controversy exceeds $5 million. The Court therefore has CAFA class-action jurisdiction over Leos's action and thus **DENIES** his Motion to Remand. (ECF No. 19.) Further, because the Court finds that FedEx has met its evidentiary burden, it declines to stay the proceedings pending the outcome of *Dart Cherokee Basin Operating Co. v. Owens*, 134 S. Ct. 1788 (2014).

**IT IS SO ORDERED.**

June 10, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**